# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 762 | **DATE** | September 29, 2000 |
| **CASE TITLE** | General Electric v. Phil Smith, et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant's motion to dismiss and in the alternative to transfer [8-1] is denied. Defendant should answer the complaint by October 20, 2000. A status conference is set for November 29, 2000 at 9:30 a.m.

(11) [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | number of notices | | |
| x | Notices MAILED by judge's staff. | OCT 0 2 2000 | | |
| | Notified counsel by telephone. | date docketed | | 13 |
| | Docketing to mail notices. | docketing deputy initials | | |
| | Mail AO 450 form. | | | |
| | Copy to _____ | | | |
| KAM | courtroom deputy's initials | date mailed notice | | |

ED-7
FILED FOR DOCKETING
00 SEP 29 AM 11:28

Date/time received in central Clerk's Office

KAM
mailing deputy initials

(Reserved for use by the Court)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GENERAL ELECTRIC CAPITAL AUTO, | ) | |
| FINANCIAL SERVICES, INC., a | ) | |
| Delaware corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 00 C 0762 |
| | ) | |
| PHIL SMITH CHRYSLER PLYMOUTH, | ) | |
| JEEP EAGLE, A Florida | ) | |
| corporation, | ) | |
| | ) | |
| Defendant. | ) | |

**DOCKETED**
**OCT 0 2 2000**

## MEMORANDUM OPINION

Before the court is defendant's motion to dismiss pursuant to

Rules 12(b)(2), (b)(3), and (b)(6) of the Federal Rules of Civil

Procedure.  In the alternative, defendant requests that this action

be transferred to the United States District Court for the Southern

District of Florida pursuant to 28 U.S.C. § 1404(a).  For the

reasons stated in this opinion, the motion and the request to

transfer are denied.

## BACKGROUND

In November, 1996, plaintiff General Electric Capital Auto

Financial Services, Inc. ("G.E. Auto"), a Delaware corporation,



headquartered in Barrington, Illinois, entered into a Dealer Lease Plan Agreement with defendant Phil Smith Chrysler Jeep Eagle ("Phil Smith"), a Florida corporation with its principal place of business in Homestead, Florida.

The following facts are undisputed. Pursuant to the parties' agreement, Phil Smith leased vehicles to customers, then sold the vehicles and assigned the leases to G.E. Auto. Phil Smith would complete all necessary paperwork for the lease and the sale and send that paperwork to G.E. Auto. Originally the documentation was sent to G.E. Auto's regional facility in Charlotte, North Carolina. In June, 1998, the Charlotte facility was closed, so Phil Smith began submitting the materials to G.E. Auto's Barrington facility. According to plaintiff, 50 lease packages were submitted to the Barrington facility in June, 1997. Another 74 packages were submitted to that facility in July and August, 1998. For transactions executed during this time period, G.E. Auto sent checks to Phil Smith (in Florida) from Illinois totaling $1,257,502, $1,104,294 and $685,032, respectively.

**The Alleged Fraud[1]**

---

[1]  These allegations are set forth in the Complaint, at 2-3, and in Plaintiff's Response to Defendant's Motion to Dismiss or Transfer ("Plaintiff's Response"), at 2-3. Plaintiff also supports these allegations with the Affidavit of Terrence E. Ebel, Compliance Director of G.E. Auto and with copies of the

Plaintiff alleges that beginning in around July, 1997, Phil Smith engaged in a scheme to send fraudulent documentation to G.E. Auto in connection with the lease and sale. The fraudulent scheme worked as follows: Phil Smith created dummy invoices for the vehicles, in which it increased the manufacturer's suggested retail price ("MSRP"). Phil Smith used the inflated MSRP to set an equally inflated "residual value," which is a projection of the value of the vehicle at lease end.

The monthly lease payment is a function of two factors: depreciation and the lease charge. Depreciation is calculated based upon the difference between the capitalized cost of a vehicle and its residual value. By overstating the residual value, Phil Smith was able to decrease the depreciation component and thereby deflate the monthly lease payment. As a result, G.E. Auto, at lease term, would own a vehicle worth significantly less than its purported residual value. G.E. Auto claims to have discovered the fraud in late August, 1998.

**The Pending Action**

Invoking diversity jurisdiction, plaintiff filed this suit against Phil Smith in February, 2000, alleging breach of contract

---

"dummy invoices." <u>See</u> Plaintiff's Response, Exhibits A and B.

and fraud. In Defendant's Motion to Dismiss Complaint Or, In the Alternative, Motion to Transfer, And Incorporated Memorandum of Law, ("Defendant's Motion") Phil Smith argues that the complaint should be dismissed for lack of personal jurisdiction under Rule 12(b)(2), and improper venue under Rule 12(b)(3). Defendant also argues that the fraud count should be dismissed, pursuant to Rule 12(b)(6), for failure to state a claim. In the alternative, defendant requests that this action be transferred to the United States District Court for the Southern District of Florida, pursuant to 28 U.S.C. § 1404(a).

## DISCUSSION

### I.  Personal Jurisdiction

The standards by which the court must evaluate a 12(b)(2) motion to dismiss are straightforward. A federal district court in Illinois has personal jurisdiction over a nonresident party if an Illinois state court would have jurisdiction. Michael J. Neuman & Assocs. v. Florabelle Flowers, Inc., 15 F.3d 721, 724 (7th Cir. 1994). On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of providing sufficient evidence to establish a prima facie case for personal jurisdiction. Id.; see also RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1276 (7th Cir. 1997); Arena Football League, Inc. v. Roemer, 947 F. Supp.

337, 339 (N.D. Ill. 1996). The jurisdictional allegations in the complaint are taken as true unless controverted by the defendant's affidavits. Any conflicts among affidavits must be resolved in the plaintiff's favor. <u>Turnock v. Cope</u>, 816 F.2d 332, 333 (7th Cir. 1987); <u>Cherry Communications, Inc. v. Coastal Tel. Co.</u>, 906 F. Supp. 452, 454 (N.D. Ill. 1995); <u>Czarobski v. St. Kieran's Church</u>, 851 F. Supp. 1219, 1220 (N.D. Ill. 1994).

An Illinois state court has jurisdiction over a nonresident defendant if the defendant has engaged in any conduct that would fall under 735 ILCS 5/209(a), the state's long-arm statute. <u>Publications Int'l Ltd. v. Simon & Schuster, Inc.</u>, 763 F. Supp. 309, 310 (N.D. Ill. 1991). As of September 7, 1989, an Illinois state court also may exercise jurisdiction "on any other basis now or hereafter permitted" by the state or federal constitutions. 735 ILCS 5/2-209(c); <u>see also</u> <u>Janmark, Inc. v. Reidy</u>, 132 F.3d 1200, 1202 (7th Cir. 1997)(stating that Illinois has "extended its long-arm power to the limit allowed by the Constitution of the United States"). This lawsuit was filed after that date, so the court may analyze this jurisdictional issue under § 2-209(c). <u>FMC corp. v. Varonos</u>, 892 F.2d 1308, 1311 n. 5 (7th Cir. 1990). Because § 2-209(c) authorizes personal jurisdiction to the constitutional

limit, the statutory analysis collapses into a due process inquiry. See Dehmlow v. Austin Fireworks, 963 F. 2d 941, 945 (7th Cir. 1992).

A court's assertion of personal jurisdiction must comport with "'traditional notions of fair play and substantial justice'" to satisfy the Due Process Clause. International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). The touchstone of the due process analysis is whether the defendant purposefully established "minimum contacts" with the political unit encompassing the forum. Asahi Metal Indus. Co. v. Superior Court of Cal., 480 U.S. 102, 108-09 (1987). Even defendants not physically present in the jurisdiction have sufficient "minimum contacts" if they do some act by which they purposefully avail themselves of the privilege of conducting activities in the forum state, Hanson v. Denckla, 357 U.S. 235, 253 (1958), and if they "should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). Due process also requires that the action arise from or relate to the defendant's contacts with the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985); Heritage House Restaurants, Inc. v. Continental Funding Group, Inc., 906

F.2d 276, 281 (7th Cir. 1990). An additional applicable rule is that "the state in which the victim of a tort suffers the injury may entertain a suit against the accused tortfeasor." <u>Janmark</u>, 132 F.3d at 1202 (applying <u>Calder v. Jones</u>, 465 U.S. 783 (1984)).

Plaintiff argues that Phil Smith established minimum contacts with the forum because it transacted business in Illinois and entered into a contract substantially connected with the state. Plaintiff also alleges that Phil Smith committed the tort of fraud in Illinois. We address first plaintiff's assertion that the tort was committed in Illinois. If we assume plaintiff's allegations are true, as we must for purposes of this inquiry, we agree that Phil Smith's mailing of false documentation to Illinois was a tort (and/or a breach of contract) that occurred within the forum.

Phil Smith argues that if a fraud was committed, the tortious act occurred in Florida, where the cars were leased and the fraudulent paperwork was created. We disagree: if Phil Smith had merely created dummy invoices, without ever sending them to G.E. Auto, there would have been no tort. The Seventh Circuit directly addressed this point in <u>Janmark</u> when it noted:

> There is no tort without injury, and the state in which the injury (and therefore the tort) occurs may require the wrongdoer to answer for its deeds even if events were put in train outside its borders. A wrong does not

become a 'tort' until an injury has occurred (speeding is
wrongful, but not tortious, if no one is injured), and
the location of the injury therefore is vital to
understanding where the tort occurred. 132 F.2d at 1201
(citations omitted).

G.E. Auto had to receive the falsified information, in Illinois, in

order to be deceived. Thus personal jurisdiction over Phil Smith

in this forum is appropriate because the tort was completed in

Illinois, if not when the deception occurred, certainly when G.E.

Auto sent checks in reliance upon the fraudulent paperwork.

Plaintiff also argues that Phil Smith established minimum

contacts with the forum because it transacted business in Illinois

and entered into a contract substantially connected with the state.

Phil Smith relies upon Goldberg v. Miller, 874 F. Supp. 874 (N.D.

Ill. 1995) to argue that it did not establish minimum contacts with

the forum in this way. In Goldberg, Miller, an individual

diagnosed as HIV positive, sold his life insurance policy to a

viatical insurance company. Miller lived in California, dealt with

a California broker for the viatical company, executed the

assignment of his insurance policy in California and was paid in

California. The court held that the viatical company, located in

Illinois, could not bring the action against either Miller, or the

broker, in the northern district of Illinois. The court found that

Miller's sale of his policy was not business transacted within Illinois nor was it the making or performance of a contract substantially connected with Illinois. With respect to the broker, the court determined that phone calls made by the broker, urging the insurer to rescind its agreement with the Millers, did not create "continuing obligations" between itself and Illinois residents. Id. at 876, citing Burger King, 471 U.S. at 476.

Defendant argues that since G.E. Auto's Florida representative initially solicited the contractual arrangement, and the contract was signed in Florida, this court does not have jurisdiction. Further, Phil Smith maintains that it has never conducted any business in Illinois, nor does it advertise, solicit business, maintain an office, agents or representatives, or own any real or personal property in Illinois.

While jurisdiction based on the contractual arrangement in this case represents a somewhat closer question than whether the alleged tort occurred within the forum, we find, nevertheless, that jurisdiction is appropriate on this basis as well. Goldberg is distinguishable because this case involves more than a singular transaction: Phil Smith mailed paperwork for the sale of 124 automobiles to Barrington, Illinois, pursuant to the Dealer Lease

Agreement. In return, it received numerous checks from an Illinois resident. This conduct is more similar to the "regularly conducted business . . . by mail and telephone" conducted by the diverse parties in <u>Ben Kozloff, Inc. v. H& G Distr. Inc.</u>, 717 F. Supp. 1336 (N.D. Ill. 1989), where a wholesaler and distributor communicated through the mail and by phone for seven years. <u>See, also</u>, <u>Continental Bank v. Everett</u>, 964 F.2d 701, 703 (7th Cir. 1992)(when documents were delivered and executed in Illinois, loan to be repaid in Illinois, and Illinois law chosen to govern, diverse guarantor was subject to personal jurisdiction).

## II.  Venue

In a diversity case venue is proper "in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(a). Plaintiff argues that a "substantial part of the events" occurred in Illinois because a

significant part of the contract was performed in Illinois and because the fraud was perpetrated here. For the same reasons discussed above, we agree that a substantial part of the events did occur in Illinois. If the contract was breached, or the tort of fraud committed, it occurred in Illinois. Thus, venue is proper in the Northern District of Illinois, and defendant's motion to dismiss the action for improper venue is denied.

Phil Smith requests, in the alternative, that we transfer this action to the Southern District of Florida, pursuant to 28 U.S.C. § 1404(a). "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In other words, transfer is appropriate where: "(1) venue is proper in both the transferor and transferee court; (2) transfer is for the convenience of the parties and witnesses; and (3) transfer is in the interest of justice." <u>Law Bulletin Publ'g, Co. v. LRP Publications, Inc.</u>, 992 F. Supp. 1014, 1017 (N.D. Ill. 1998) (citing <u>Vandeveld v. Christoph</u>, 877 F. Supp. 1160, 1167 (N.D. Ill. 1995). Movants have the burden of demonstrating that the transferee forum best serves these interests. <u>Heller Financial, Inc. v. Midwhey Powder Co.</u>, 883 F. 2d 1286, 1293 (7th Cir. 1989).

Neither party disagrees that the Southern District of Florida meets the first requirement.[2] With respect to the second and third considerations, Phil Smith argues that its employees are in Florida and that the G.E. Auto employees with knowledge are few. Relevant documents are in Florida. Defendant also suggests the lessees of each of the automobiles, most of whom reside in Florida, will be necessary witnesses at trial. Phil Smith also argues that the 200 vehicles, the value of which is the basis for damage calculations, are in Florida. Finally, defendant argues that the case would be heard more quickly in Florida. G.E. Auto counters that all the witnesses and the documents it intends to use are located in Illinois.

We find defendant's motion premature. At this time there is no indication that the relative conveniences or interests of justice favor one forum over the other. Discovery will occur at the appropriate locations under the Rules, regardless of where the case is pending. Defendant cannot be certain, at this point, which witnesses it will actually call if this case goes to trial. Thus, we deny this motion as premature.

---

[2] The Southern District of Florida is an appropriate venue under § 1391 (a)(1) because defendant resides there. It also meets alternative (a)(2) because more than one situs may qualify as the as the situs of "substantial" activities. WPC Machinery Corp. v. Periodical Graphics, Inc., 1994 WL 643249, No. 93 C 7091, at *3 (N.D. Ill. 1994)(Grady, J.)("If one district's contacts are substantial it makes no difference that another's are more so.")(citations omitted). Because the cars were leased in Florida, and the paperwork originated there, Florida would also qualify as a situs of substantial activities.

## III. Defendant's Motion to Dismiss Plaintiff's Fraud Claim

Federal Rule of Civil Procedure Rule 9(b) states that "in all averments of fraud or mistake, the circumstances constituting fraud and mistake shall be stated with particularity." The Seventh Circuit has fleshed out this requirement, mandating dismissal of claims that do not state the "who, what, when, where, and how" of the fraud. DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir.1990). Rule 9(b) does not require exhaustive detail, but the plaintiff should

> set forth the time, place, and substance of the allegedly false representations, as well as the identity of the individual making the representations. The allegations are sufficient if the defendant is able to understand the nature of the conduct from which the plaintiff has drawn the inference of fraud and can defend against the allegations. Tibor Mach. Prods., Inc. v. Freudenberg-Nok Gen. Partnership, No. 94 C 7635, 1996 WL 99896, at *3 (N.D. Ill. Feb. 29, 1996) (Grady, J.).

Phil Smith moves to dismiss plaintiff's fraud count, arguing that G.E. Auto has not identified who was involved in the preparation of the allegedly false invoices, nor how they falsified the invoices, nor why G.E. Auto believes the residual values provided were not substantially accurate. Defendant's argument fails because G.E. Auto has described the alleged fraud with sufficient particularity: the complaint states that Phil Smith (who) prepared phony manufacturer invoices to be used to set

inflated residual values on the car leases (what and how). Further, G.E. Auto identifies a specific time and place at which the representations were made: on 210 occasions false documents were submitted by Phil Smith (from Florida) to G.E. Auto (in South Carolina or Illinois) between July, 1997 and August, 1998.

## CONCLUSION

For the foregoing reasons, we deny defendant's motion to dismiss pursuant to Rule 12(b)(2), (b)(3) and (b)(6). We also deny, as premature, defendant's request to transfer this action to the United States District court for the Southern District of Florida, pursuant to 28 U.S.C. § 1404(a).

Defendant should answer the complaint by October 20, 2000. A status conference is set for November 29, 2000 at 9:30 a.m.


DATE:        September 29, 2000


ENTER:       _____
             John F. Grady, United States District Judge